UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————X

THE NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, THE TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE PENSION FUND, THE NEW YORK CITY
FIRE DEPARTMENT PENSION FUND,
THE NEW YORK CITY BOARD OF EDUCATION
RETIREMENT SYSTEM,

|  |  |
|---|---|
| Plaintiffs, | COMPLAINT |
| -against- | 18 Civ. 11344 |
| TRANSDIGM GROUP, INC., | |
| Defendant. | |

———————————————————————————X

Plaintiffs, the New York City Employees' Retirement System ("NYCERS"), Teachers' Retirement System of the City of New York ("TRS"), the New York City Police Pension Fund ("PPF"), the New York City Fire Department Pension Fund ("FPF"), and the New York City Board of Education Retirement System ("BERS"), collectively referred to as the New York City Pension Funds (the "Funds"), by their attorney Zachary W. Carter, Corporation Counsel of the City of New York, allege the following:

## PRELIMINARY STATEMENT

1.      The Funds bring this action for a judgment enjoining defendant, TransDigm Group, Inc. ("TransDigm"), from soliciting shareholder proxies for defendant's 2019 annual shareholders meeting without including the Funds' timely-submitted shareholder proposal. The Funds are public pension funds, each of which individually holds TransDigm common stock worth more than $2,000.  The Funds' shareholder proposal was submitted to TransDigm by letter dated September 19, 2018 and lists certain principles relating to greenhouse gas emissions ("GHG") reduction targets, and requests that TransDigm adopt a

policy with time-bound, quantitative, company-wide goals for managing GHG emissions, taking into account the objectives of the Paris Climate Agreement.[1]  The proposal also directs the company to report, at reasonable cost and omitting proprietary information, on its plans to achieve these targets.  Defendant's exclusion of the Funds' shareholder proposal from its proxy solicitation violates Section 14(a) of the Securities Exchange Act of 1934 and its implementing regulations.

## PARTIES

2.      Plaintiff NYCERS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of hundreds of thousands of present and former employees of the City of New York who are not eligible to participate in any of the other New York City public pension funds.  NYCERS has the capacity to sue and be sued. NYCERS is administered by an eleven-member Board of Trustees composed of representatives from the New York City Mayor's Office, Public Advocate of the City of New York, the Comptroller of the City of New York ("Comptroller"), the Office of the Manhattan Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx Borough President, the Office of the Queens Borough President, and the Office of the Staten Island Borough President, as well as three employee members.  Pursuant to statute, the Comptroller is the custodian of NYCERS' assets and the chief investment advisor for NYCERS.

3.      Plaintiff TRS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of hundreds of thousands of present and former public school teachers and other employees of the City of New York.  TRS has the capacity to sue and be sued.  TRS is administered by a seven-member Board of Trustees composed of representatives from the New York City Mayor's Office, the New York City Department of Education, the Comptroller, and the Chancellor of the New York City Department

---

[1] Paris Agreement to the United Nations Framework Convention on Climate Change, Dec. 12, 2015, T.I.A.S. No. 16-1104.

of Education, as well as three employee members.  Pursuant to statute, the Comptroller is the custodian of TRS' assets and the chief investment advisor for TRS.

4.    Plaintiff PPF is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former full-time uniformed employees of the New York City Police Department.  PPF has the capacity to sue and be sued.  PPF is administered by a twelve-member Board of Trustees composed of representatives from the New York City Mayor's Office, the Comptroller, the New York City Police Commissioner, the New York City Department of Finance, the New York City Patrolmen's Benevolent Association, the New York City Sergeants' Benevolent Association, the New York City Detectives' Endowment Association, the New York City Captains' Endowment Association, and the New York City Lieutenants' Benevolent Association. Pursuant to statute, the Comptroller is PPF's custodian of the assets and the chief investment advisor for PPF.

5.    Plaintiff FPF is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former full-time uniformed employees of the New York City Fire Department.  FPF has the capacity to sue and be sued.   FPF is administered by an eleven–member Board of Trustees composed of representatives from the New York City Mayor's Office, the Comptroller, the New York City Fire Commissioner, the New York City Department of Finance, the New York City Uniformed Firefighters Association, the New York City Uniformed Fire Officers Association, and the New York City Uniformed Pilots and Marine Engineer's Association.  Pursuant to statute, the Comptroller is the custodian of the assets and chief investment Advisor for FPF.

6.    Plaintiff BERS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former non-pedagogical employees of the New York City Department of Education.  BERS has the capacity to sue and be sued.  BERS is administered by a nine-member Retirement Board

composed of representatives from the New York City Mayor's Office, the New York City Department of Education, the Office of the Manhattan Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx Borough President, the Office of the Queens Borough President, and the Office of the Staten Island Borough President, as well as two employee members. Pursuant to statute, the Comptroller is the custodian of BERS assets and the chief investment Advisor for BERS.

7.      Defendant TransDigm is incorporated, organized and existing under the laws of the State of Delaware with its registered agent, the Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801. Defendant TransDigm's primary office is located at The Tower at Erieview, 1301 East 9th St., Suite 3000, Cleveland, OH 44114. TransDigm sells securities that are registered with the Securities & Exchange Commission.

8.      TransDigm is a global producer, designer and supplier of engineered aerospace components, systems and subsystems for use on commercial and military aircraft, with operations in North America and Europe.

## JURISDICTION AND VENUE

9.      This action arises under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("Securities Act"), and Securities and Exchange Commission ("SEC") Rule 14a-8, 17 C.F.R. § 240.14a-8 ("Rule 14a-8").

10.     This Court has jurisdiction over the subject matter of the action under 28 U.S.C. § 1331.

11.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 78aa because transactions constituting defendant's violation of law have occurred and will occur in this district.

## BACKGROUND

12.     TransDigm, like other large companies, solicits proxies in advance of its annual shareholder meetings to insure that a quorum of shareholder votes exist to take actions necessary to conduct the company's business and to permit shareholders who cannot attend in person to vote their shares.  To obtain votes by proxy, the company sends out proxy materials before the annual shareholder meeting.   These materials include (1) a proxy statement explaining what items are to be voted at the upcoming meeting and soliciting authority to vote the shareholder's shares at that meeting in accordance with the shareholder's instructions, and (2) a proxy card on which shareholders provide those voting instructions.  Under Section 14(a) of the Securities Act, proxy solicitations must comport with the Commission's rules and regulations, as codified at 17 C.F.R. § 240.14a-1 *et seq.*

13.     These rules set forth eligibility and procedural requirements if shareholders wish to submit to the company a shareholder proposal to be printed in the company's proxy materials and voted on by shareholders at the upcoming meeting.  For example, a shareholder wishing to submit such a proposal "must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to vote on the proposal at the meeting for at least one year by the date [the shareholder] submit[ted] the proposal . . . [and must] continue to hold those securities through the date of the meeting."  17 C.F.R. § 240.14a-8(b)(1).

14.     To establish eligibility to submit a shareholder proposal, the shareholder may "submit to the company a written statement from the 'record' holder of [the] securities (usually a broker or bank) verifying that, at the time [the shareholder] submitted [the] proposal, [the shareholder] continuously held the securities for at least one year."  17 C.F.R. § 240.14a-8(b)(2)(i).  The shareholder "must also include ... [a] written statement that [it] intend[s] to continue to hold the securities through the date of the meeting of shareholders."  *Id.*

15.     A shareholder proposal is limited to 500 words, *see* 17 C.F.R.

§ 240.14a-8(d), and must be "received at the company's principal executive offices not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting," *see* 17 C.F.R. § 240.14a-8(e)(2). Shareholder proposals typically contain a "resolved" clause asking the board of directors to take certain action and a "supporting statement."

16.     A company must include a shareholder proposal in its proxy solicitation materials if the proposal meets the eligibility and procedural requirements, unless the company can meet its burden of showing that the proposal falls within one or more of the 13 exclusions listed in 17 C.F.R. § 240.14a-8(i).

## THE FUNDS' SHAREHOLDER PROPOSAL

17.     As of September 19, 2018, the Funds collectively owned approximately 59,729 shares of TransDigm common stock, which had as of that date a market value of over $22 million, and are entitled to vote on shareholder proposals at TransDigm's 2019 annual meeting of shareholders.

18.     Each of the Funds, as of September 19, 2018, had held TransDigm common stock in excess of $2,000 in market value for at least one year and will continue to do so through the date on which TransDigm's 2019 annual meeting for shareholders is to be held.

19.     The Funds each authorized the Comptroller to present a shareholder proposal on behalf of the Funds, seeking to have TransDigm adopt a policy with time-bound, quantitative, company-wide goals for managing GHG emissions, taking into account the objectives of the Paris Climate Agreement, and report, at reasonable cost and omitting proprietary information, on its plans to achieve these targets. The proposal expressly leaves the "nature, timing and level of the goals entirely up to TransDigm's discretion."

20.     The Comptroller notified TransDigm by letter dated September 19, 2018 of the Funds' intention to present a shareholder proposal at TransDigm's 2019 annual meeting of shareholders. The Comptroller requested that its proposal be included in defendant's

proxy solicitation for that meeting.

21.   The Funds' proposal to the TransDigm shareholders specifically states as follows:

### Greenhouse Gas Emissions Reduction Targets

**Resolved:** Shareholders request that TransDigm Group, Inc. adopt a policy with time-bound, quantitative, company-wide goals for managing greenhouse gas (GHG) emissions, taking into account the objectives of the Paris Climate Agreement, and report, at reasonable cost and omitting proprietary information on its plans to achieve these targets.

**Supporting Statement:** It is appropriate for shareholders to request that TransDigm set goals for managing GHG emissions because such goals help to mitigate a critically important issue for civil society and businesses -- climate change.

Scientists expect that failure to mitigate climate change will lead to additional sea level rise, more extreme weather, mass migration, and public health impacts from heat waves, fires, and changing disease vectors. In one shocking worst case scenario -- a 4 degree centigrade increase in average global temperatures -- the World Bank has stated it may not be possible for humanity to adapt.

To manage the risks posed by climate change, representatives from approximately 195 countries adopted the Paris Climate Agreement, which aims to limit the increase in global average temperature -- and the most devastating social impacts of climate change -- by reducing GHG emissions. Transitioning to the low-carbon future envisioned in the Accord is likely to fundamentally transform the global economy and the competitive environment in which all corporations operate.

This proposal requests adoption of a high level policy with goals but leaves the nature, timing and level of the goals entirely up to Transdigm's discretion. The proposal is not an attempt to micromanage but to set a guiding direction that can be assessed by shareholders.

The GHG management goals requested are intended to be integrated with other the goals the company has adopted. Well over 60% of Fortune 100 companies have already set GHG emissions targets, presumably while taking into consideration other corporate

goals and policies.[2]   Operating a company by striving to meet a variety of specific goals is a standard business practice.

Examples of companies with GHG reduction goals include: Walmart, Apple, Johnson & Johnson, GM, AT&T, Procter & Gamble, JP Morgan Chase, McDonald's and Microsoft.[3]

Transdigm's peers in the aerospace and defense industry that have set GHG management goals include United Technologies, Boeing, Lockheed Martin and Northrop Grumman.

Large institutional investors such as BlackRock and State Street Global Advisors have publicly and privately called on companies to address climate change.  A State Street white paper states:  "We view establishing company-specific GHG emissions targets as one of the most important steps in managing climate risk."[4]  Investors are concerned about climate impacts on individual companies as well as portfolio-wide risks related to changing regulations and costs associated with extreme weather events.

There are numerous cost-effective ways for companies to reduce GHG emissions and help protect society from the worst impacts of climate change while reaping financial benefits.

22.     Materials submitted with the proposal fully established the Funds' eligibility and compliance with SEC Rule 14a-8.

23.     By letter dated November 9, 2018, TransDigm wrote to the SEC Division of Corporation Finance ("Division"), advising the Division that TransDigm intended to omit the proposal from its proxy materials.  Rule 14a-8 requires such notice to the Division and the proponent if a company believes that a proposal may be excluded under one of the 13 exclusions in Rule 14a-8(i).  TransDigm also asked the Division to issue a "no-action letter" stating that the Division will not recommend that the SEC take action against the company if the company excludes the proposal from its proxy solicitation materials.  Companies are not

---

[2] https://c402277.ssl.cf1.rackcdn.com/publications/1049/files/original/Power_Forward_3.0_-_April_2017_-_Digital_Second_Final.pdf?1493325339, p 2
[3] https://c402277.ssl.cf1.rackcdn.com/publications/1049/files/original/Power_Forward_3.0_-_April_2017_-_Digital_Second_Final.pdf?1493325339, P. 40
[4] https://www.ssga.com/investment-topics/environmental-social-governance/2017/perspectives-on-effective-climate-change-disclosure.pdf, p. 2.

required to seek a "no-action" opinion when they give notice of their intent to omit a proposal; the no-action process merely serves as an informal means for the company and the proponent to learn the Division's non-binding view on the company's planned omission of the proposal. TransDigm made its no-action request on the grounds that, pursuant to Rule 14a-8(i)(7), the subject of the proposal impermissibly related to TransDigm's "ordinary business matters."

24.     To date, the SEC has not responded to TransDigm's no-action request.

25.     Upon information and belief, the shareholders of TransDigm will mail proxy materials to shareholders in late January or early February 2019 for the 2019 annual shareholder meeting in March 2019.

26.     TransDigm's decision to omit the Funds' proposal from its 2019 proxy materials has caused injury to the Funds.  If the proposal is omitted from the proxy materials distributed in anticipation of TransDigm's 2019 annual meeting, that injury will be irreparable. The Funds intend to submit the proposal again next year, for inclusion in next year's proxy materials.  The Funds plan to repeat this process until the proposal is adopted.

## CAUSE OF ACTION
### (Violation of Securities Act and Related SEC Rule)

27.     The Funds restate the allegations of paragraphs 1 through 26.

28.     The SEC has promulgated rules governing the solicitation of proxies with respect to any security registered in accordance with Section 12 of the Securities Act, 15 U.S.C. § 78l.

29.     TransDigm's equity securities are registered under Section 12 of the Securities Act, 15 U.S.C. § 77l.

30.     The SEC has promulgated Rule 14a-8, which outlines the procedures for the submission of a shareholder proposal for a company's proxy statement.

31.     The Funds, individually and collectively, have complied with the eligibility and procedural requirements for including the shareholder proposal in TransDigm's

proxy statement, as set forth in Rule 14a-8. In particular, the Funds have individually and collectively owned for at least one year on the date they submitted the proposal, and intend to own through the 2019 annual meeting, securities whose market value exceeds $2,000. The proposal was submitted in a timely fashion and otherwise complies with all applicable requirements.

32.     TransDigm must include the Funds' shareholder proposal in TransDigm's proxy statement under Rule 14a-8, unless it can affirmatively establish that one of the exemptions listed in Rule 14a-8 applies.

33.     The exemption set forth in Rule 14a-8(i)(7)—the only exemption cited in TransDigm's letter to the SEC—does not apply to the Funds' proposal.

34.     TransDigm intends to exclude the Funds' proposal from the proxy materials for its annual shareholder meeting for 2019.

35.     Exclusion by defendant of the Funds' proposal from defendant's proxy materials with respect to defendant's annual shareholder meeting for 2019 violates SEC Rule 14a-8.

36.     Wrongful exclusion of the Funds' shareholder proposal from defendant's proxy materials deprives the Funds of any meaningful opportunity to inform other shareholders about the content of, and reasons for, the proposal. Exclusion of the Funds' proposal from the proxy materials also deprives all shareholders of an opportunity to vote on the Funds' proposal.

37.     The Funds have no adequate remedy at law.

**WHEREFORE,** plaintiffs demand preliminary relief and a final judgment:

(a)     declaring that TransDigm's decision to omit plaintiffs' proposal from its proxy solicitation materials violates §14(a) of the 1934 Act and Rule 14a-8;

(b)     enjoining defendant from soliciting shareholder proxies for defendant's 2019 annual meeting for shareholders without informing shareholders of plaintiffs' proposal and including the proposal in its proxy materials;

(c)    awarding the Funds their costs and disbursements of this action, including

reasonable attorneys' fees, pursuant to the common benefit doctrine;

(d)    any other relief the Court deems just and proper.

Dated:    New York, New York
          December 5, 2018

                        ZACHARY W. CARTER
                        Corporation Counsel of the
                          City of New York
                        Attorney for Plaintiffs
                        100 Church Street, Room 20-87
                        New York, New York 10007
                        (212) 356-4050

                    By: _____
                        Inga Van Eysden
                        Assistant Corporation Counsel